**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

GARY VALENTINE, and            :
LAURA VALENTINE,               :
                               :
    Plaintiffs,               :
                               :      CIVIL ACTION NO.
v.                             :      2:10-CV-0097-RWS
                               :
SHERIFF JOEL ROBINSON, in      :
his individual and official    :
capacities;                    :
DEPUTY ANDRA BUSH, in her      :
individual and official capacities; :
DEPUTY IAN GEIMAN, in his      :
individual and official capacities; :
INVESTIGATOR FAYE              :
SPALDING, in her individual and :
official capacities; and       :
INVESTIGATOR LISA CARR, in     :
her individual and official    :
capacities;                    :
                               :
    Defendants.               :

<u>**ORDER**</u>

    This case comes before the Court on Defendants' Motion to Dismiss [10]

and Plaintiffs' Motion for Leave to Amend Complaint for Damages [18].  After

reviewing the record, the Court enters the following order.

AO 72A
(Rev.8/82)

**Background**

Gary and Laura Valentine (collectively "Plaintiffs") brought this action against former Barrow County Sheriff Joel Robinson, Barrow County Deputy Sheriff Andra Bush, Barrow County Deputy Sheriff Ian Geiman, Barrow County Sheriff's Department Investigator Faye Spaulding, and Barrow County Sheriff's Department Investigator Lisa Carr (collectively "Defendants") on various claims for damages pursuant to 42 U.S.C. § 1983.  (Complaint [1] at ¶ 1).  Defendants are the mother and step-father of William Patrick Narens, and the grandparents of William's daughter Iris Victoria Narens.  (Amended Complaint [18-2] at ¶ 11).[1] This case arose out of a custody dispute over Iris Narens.  (Id. at ¶ 12-19).  In an attempt to locate Iris Narens, Deputy Bush and Deputy Geiman traveled to Plaintiffs' home several times.  (Id. at ¶ 20-21).

Deputy Bush, Deputy Geiman, and Investigator Carr believed that Plaintiffs' daughter, McKenzie Valentine, may have information about the whereabouts of Iris Narens and informed Laura Valentine of their intent to interview McKenzie Valentine.  (Id.).  Laura Valentine told the officers that McKenzie Valentine was at the babysitter's house.  (Id. at ).  Laura Valentine further informed the deputies

---

[1]  Whether Plaintiffs should be allowed to amend their complaint is at issue in this case.  At the motion to dismiss stage however, the Court will assume the facts presented in Plaintiffs' Amended Complaint to be true.

and Investigator Carr that McKenzie Valentine has special needs and the interview could be especially traumatic for her. (Id.). Laura Valentine offered to arrange an interview at the Tree House, a local child advocacy center. (Id.). Despite this request, on May 27, 2008, Deputy Bush and Investigator Carr went to the babysitter's home to interview McKenzie Valentine. (Id.).

Laura Valentine went to the babysitter's home to "protect and retrieve her daughter." (Id.). After arriving at the babysitter's home and speaking with Deputy Bush, Laura Valentine was arrested by Deputy Bush at the direction of Investigator Carr. (Id.). She was then placed in the backseat of Deputy Bush's police vehicle and driven back to her home. (Id.). After arriving back at her home, Laura Valentine was left in the car, purportedly at the direction of Investigator Spaulding, for approximately 2-3 hours with no air conditioning and the windows rolled up. (Id. at ¶ 22). Investigator Spaulding continued to question Laura Valentine while she was in the back of the car. (Id.) Laura Valentine provided information that lead to Iris's location. (Id.). Laura Valentine was later taken to the Barrow County Jail where she was booked and released on bond 72 hours later. (Id.). Gary Valentine was arrested on May 30, 2008 when he went to the Barrow County Jail to obtain the release of his wife. (Id. at ¶ 3). Plaintiffs were charged with Interference with Custody, and Laura Valentine was charged with Obstruction and

3

Evidence Tampering.  (Id. at ¶ 23).  All of the charges against the Plaintiffs were

subsequently dismissed.  (Id.).

Plaintiffs' complaint raises various claims brought under 42 U.S.C. § 1983,

which provides that,

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law ...

Plaintiffs' Complaint states five counts.  Count I alleges that Plaintiffs'

arrest violates the Fourth, Fifth, and Fourteenth Amendments to the Constitution

of the United States.  (Complaint [1] at ¶ 21).  Count II alleges that Plaintiffs'

detention and confinement violated their Fifth and Fourteenth Amendment Rights.

(Id. at ¶ 25).  Count III states that Plaintiffs' Fifth and Fourteenth Amendment

rights were violated when they were subjected to a strip search at the Barrow

County Jail.  (Id. at ¶ 27).  Count IV alleges that Defendants unlawfully conspired

to deprive Plaintiffs of their Fifth and Fourteenth Amendment Rights.  (Id. at ¶ 29).

Count V alleges that Sheriff Robinson should be held liable for the actions of the

other Defendants for a failure to instruct, supervise, control, and discipline.  (Id.

at ¶ 32).

As an initial matter, Plaintiffs concede in their Response [17-1] that they cannot allege as a matter of law any claims against the Defendants in their official capacities, any claims against Barrow County, any claim for violations of the Fifth Amendment, and any claims for an unlawful strip search.  (Plaintiffs' Response to Defendant's Motion to Dismiss ("Pl's Response"), Dkt. [17-1] at p. 4-5). Plaintiffs' Amended Complaint does not allege a claim for unlawful strip search. To the extent that Plaintiffs' Amended Complaint asserts any claims against Barrow County, a violation of the Fifth Amendment, and any claims against the Defendants in their official capacities, such claims are, by Plaintiffs' own admission, futile.

With respect to the remaining claims, Defendants state that Plaintiffs' claims should be dismissed because Plaintiffs' complaint fails to allege facts sufficient to state a claim for relief.  (Defendants' Motion to Dismiss ("Def's Motion"), Dkt. [10-1] at p. 9-10).  Defendants further assert that Plaintiffs should not be allowed to amend their complaint, because of undue delay.  (Defendants' Response in Opposition to Plaintiffs' Motion to Amend Complaint, Dkt. [20] at p. 2-4). Defendants also assert that allowing Plaintiffs to amend their complaint would be futile because their amended complaint still does not set forth sufficient factual allegations.  (Id. at p. 5).

5

Plaintiffs do not deny that their original complaint fails to sufficiently state a claim in several regards, however, they ask the Court to give them leave to amend their complaint. In light of Plaintiffs' responses, Defendants bring the present Motion to Dismiss and Opposition to Plaintiffs' Motion to Amend Complaint.  The Court now examines the pending motions.

## Discussion

In determining whether Plaintiffs should be allowed to amend their complaint, the Court acknowledges that Plaintiffs did delay in filing their Motion to Amend the Complaint.  However the Court finds that the delay was not to such a degree that an examination of the merits of Plaintiffs' claims should be precluded.[2]  Defendants assert that they are entitled to qualified immunity because Plaintiffs' complaint does not demonstrate that defendants' actions violated clearly established constitutional law.   (Def's Motion at p. 16);   See Hartsfield v. Lemacks, 50 F.3d 950, 953 (11th Cir. 1995) (explaining that in order for qualified immunity to apply, defendant must show that action was discretionary, and then burden shifts to plaintiff to demonstrate that defendant's actions violated clearly

---

[2]  Plaintiffs filed their original Complaint of 5/26/2010 [1].  Defendants filed their Answer on 8/16/2010 [11].  Defendants filed their Motion to Dismiss on 8/16/2010 [10-1].  Plaintiffs filed their Motion to Amend the Complaint on 9/13/2010 [18].

established constitutional law).  Plaintiffs concede that their original complaint does not state sufficient facts to overcome qualified immunity.  (Pl's Response, Dkt. [17-1] at p. 5).  However, Plaintiffs request that the Court allow them to amend their complaint to put forth sufficient facts to state a claim.  (Id.).  If allowing Plaintiffs to amend their complaint would be futile, the Court will grant Defendants motion to dismiss with respect to the futile claims.  Thus, the Court has undertaken a thorough examination of Plaintiffs' Amended Complaint to ascertain its sufficiency.

## I.   Standard for Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).  A complaint is plausible on its face when the plaintiff pleads factual content

7

necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

It is important to note that while the factual allegations set forth in the complaint are to be considered true at the motion to dismiss stage, the same does not apply to legal conclusions set forth in the complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. The court does not need to "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

## II.     Standard to Amend the Complaint

Pursuant to Federal Rule of Civil Procedure 15(a), after a responsive pleading has been filed, as it has been here, a party may amend his pleading only with leave of court or written consent of the adverse party. The Rule goes on to provide, "leave shall be freely given when justice so requires." A district court may deny an amendment, however, where the amendment is futile. Campbell v. Emory Clinic, 166 F.3d 1157, 1162 (11th Cir. 1999).

8

### III.   Plaintiffs' Claims

A.   <u>Arrest and Detention</u>

Counts I and II allege that Defendants violated Plaintiffs' Fourth and Fourteenth Amendment rights when they were arrested and detained. (Complaint [1] at ¶ 21, 25). With respect to Gary Valentine, the Amended Complaint fails to allege sufficient detail about his arrest, including, specifically, which officer arrested him.   Thus, Gary Valentine's claims under Count I and II are **DISMISSED**.

Plaintiffs' amended complaint states that Laura Valentine's rights were violated when she was arrested at the babysitter's home when she went to retrieve her daughter. (Amended Complaint, Dkt. [18-2] at ¶ 26). Laura Valentine alleges that she informed Deputy Bush, Deputy Geiman, and Investigator Carr that her ten year old daughter had special needs and that she thought the interview would be traumatic for her.  (<u>Id.</u> at ¶ 21). Laura Valentine offered to have her daughter professionally interviewed at the Tree House, a local advocacy center. (<u>Id.</u>) When informed by the babysitter that her daughter was being interviewed at the babysitter's home, Laura Valentine went there to protect her daughter. (<u>Id.</u>) After

AO 72A
(Rev.8/82)

speaking with Deputy Bush, Laura Valentine was arrested in front of her daughter and placed in Deputy Bush's police vehicle.  (Id.)

If an officer lacks probable cause for an arrest, the arrest violates the Fourth Amendment.  Wood v. Kesler, 323 F.3d 872, 878 (11th Cir. 2003) (citing Montoute v. Carr, 114 F.3d 181, 184 (11th Cir.1997) (stating that "the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed").  Furthermore, a plaintiff who has been arrested without probable cause "has a claim under Section 1983 for false imprisonment based on a detention pursuant to that arrest."  Ortega v. Christian, 85 F.3d 1521, 1526 (11th Cir. 1996).

The Court concludes that Plaintiffs' amended complaint sets forth sufficient facts to dispute whether the Defendants had arguable probable cause to arrest Laura Valentine.  As such, any claims for detention and confinement following an arguably unlawful arrest are likewise not futile.  Thus, Plaintiffs' motion to amend their complaint with respect to Laura Valentine's claim under Counts I and II is **GRANTED**.  Defendants' motion to dismiss Counts I and II with respect to Laura

Valentine is **DENIED** and Defendants' motion to dismiss Counts I and II with respect to Gary Valentine is **GRANTED**.

      B.    <u>Conspiracy</u>

Count IV of Plaintiffs' original complaint alleges that Defendants engaged in a conspiracy in violation of Plaintiffs' Fourteenth Amendment rights. (Complaint [1] at ¶ 29).  As noted above, Plaintiff Gary Valentine has not plead facts in his amended complaint which would support claims by him against the Defendants.  Thus, allowing Gary Valentine to amend his conspiracy claim would be futile and his claim under Count IV is **DISMISSED**.

With respect to Laura Valentine, she alleges that Defendants acted in concert to facilitate her arrest, search, detention, and confinement.  (Amended Complaint, Dkt. [18-2] at ¶ 33).  In order to prove a Section 1983 conspiracy, a plaintiff "must show that the parties 'reached an understanding' to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy."  <u>Bailey v. Bd. of Cnty. Comm'rs</u>, 956 F.2d 1112, 1122 (11th Cir. Fla. 1992) (citing <u>Bendiburg v. Dempsey</u>, 909 F.2d 463, 468 (11th Cir.1990)).  At the summary judgment stage, when assessing an alleged conspiracy to violate civil rights, the court should not require the plaintiff to produce a "smoking gun." <u>Bendiburg</u>, 909 F.2d at 469.  As this case is currently at the motion to dismiss stage, the Court finds that Laura

Valentine has alleged sufficient facts in her amended complaint to proceed to discovery. Thus, Plaintiffs' motion to amend their complaint with respect to Laura Valentine's conspiracy claim is GRANTED. Defendants' motion to dismiss Count IV with respect to Laura Valentine is **DENIED** and Defendants' motion to dismiss Count IV with respect to Gary Valentine is **GRANTED**.

      C.    <u>Failure to Supervise</u>

Count V of Plaintiffs' original complaint alleges that Sheriff Robinson should be held liable under Section 1983 for refusing or neglecting to prevent the Defendants from violating Plaintiffs' constitutional rights. (Complaint [1] at ¶ 32). Plaintiffs assert that Defendants Bush, Geiman, Spaulding, and Carr were all employees of the Barrow County Sheriff's Department and acting under the direction of Defendant Sheriff Joel Robinson. (<u>Id.</u> at ¶ 31). Plaintiffs' amended complaint does not state any additional facts with regards to Sheriff Robinson's involvement in Plaintiffs' arrest and detention.

In order for a supervisor to be liable under Section 1983 the Plaintiff may show "either the supervisor's personal participation in the acts that comprise the constitutional violation or the existence of a causal connection linking the supervisor's actions with the violation." <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988); <u>see also</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978)

AO 72A
(Rev.8/82)

(concluding "that a municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory").  The causal connection "can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so."  <u>Brown v. Crawford</u>, 906 F.2d 667, 671 (11th Cir. 1990).

Plaintiffs have alleged no facts in their amended complaint that show that Sheriff Robinson either personally participated in Plaintiffs' arrest or that Sheriff Robinson had notice of the allegedly abusive acts of his subordinates.  Thus, allowing Plaintiffs to amend their complaint would be futile.  Plaintiffs' motion to amend their complaint with respect to Count V is **DENIED** and Defendants' motion to dismiss Count V is **GRANTED**.

### Conclusion

Plaintiffs' Motion to Amend the Complaint [18] is **GRANTED, in part**, and **DENIED, in part**.  Defendants' Motion to Dismiss [10] is **GRANTED, in part**, and **DENIED, in part**.  The following Counts of the Amendment Complaint are **DISMISSED**: Count I as to Gary Valentine; Count II as to Gary Valentine; Count III as to Gary Valentine; and Count IV.  To the extent Plaintiffs' Amended Complaint seeks to assert any claims arising under the Fifth Amendment, any

AO 72A
(Rev.8/82)

claims against Barrow County, or any claims against Defendants in their official capacities, such claims are **DISMISSED**.  The Court will deem the Plaintiffs' Amended Complaint [18-2] filed as of the date of this Order.  Defendants' Answer to Plaintiffs' Amended Complaint [18-2] does not need to respond to any claims dismissed in this Order.

SO ORDERED, this   11th   day of March, 2011.


**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)