**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

LAURA VALENTINE,         :
                               :
     Plaintiff,          :
                               :
     v.                 :     CIVIL ACTION NO.
                               :     2:10-CV-00097-RWS
DEPUTY ANDRA BUSH in her   :
individual capacity; *et al.*,     :
                               :
     Defendants.       :

## <u>ORDER</u>

This case comes before the Court on Plaintiff Laura Valentine's Motion Pursuant to Federal Rule of Civil Procedure ("Rule") 60 [138].  After a review of the record, the Court enters the following Order.

## Background

This case arises out of a custody dispute over Plaintiff's granddaughter, Iris.  Iris's parents, William and Chrisalena, separated and Chrisalena moved to Texas.  (Defs.' Statement of Material Facts ("SMF"), Dkt. [103-1] ¶ 43.)  After the couple filed for divorce in both Georgia and Texas, the Superior Court of Barrow County recommended that the child finish the school year in Georgia and decided that "the child shall remain in the custody of the Father until

further order of the Texas court [which it found to have assumed jurisdiction over the divorce action]." (Order, Superior Ct. of Barrow County, Dkt. [103-5] at 3.) After Chrisalena's Texas attorney informed her Georgia attorney, Ms. Free, that the Texas court had issued an order granting Chrisalena custody of Iris, Ms. Free contacted William's attorney to discuss the exchange of custody. (Incident Report, Dkt. [96-1] at 1.) Pursuant to the exchange of custody, Chrisalena and Ms. Free provided the custody order to Defendant Deputy Bush.[1] (Bush Dep., Dkt. [96] at 38.) Ms. Free also told Defendant Bush there had been a history of violence between the two parents. (Defs.' SMF, Dkt. [103-1] ¶ 27.)

Defendant Bush subsequently went to Plaintiff's home in search of William and Iris. (Id. ¶ 31.) Plaintiff told Defendant Bush they had gone camping in the Smoky Mountains and could not be reached. (Id. ¶ 32-33.) By the next day, Chrisalena began to express concern about Iris's safety and about the possibility that William had fled with their daughter. (Incident Report, Dkt. [96-1] at 2.) She told Defendant Bush that William used illegal drugs, was

---

[1]Plaintiff has vigorously disputed the validity of the custody order, (Pl.'s Resp. to Defs.' SMF, Dkt. [113-1] ¶ 24.), and now disputes whether a custody order was present at all. (Pl.'s Br. in Supp. of Mot. to Set Aside J. ("BSAJ"), Dkt. [138-1].)

involved in a satanic cult, and had a history of taking the child and refusing to return her.[2]  (Id. at 3.)

Out of concern for the child's safety, Defendant Bush contacted park rangers in the Smoky Mountains who conducted an unsuccessful search for Iris and William.  (Defs.' SMF, Dkt. [103-1] ¶ 60.)  Meanwhile, another officer learned that Plaintiff's daughter McKenzie told counselors at her school that Iris was actually staying with a woman named Amanda in Gwinnett County. (Id. ¶ 69.)  Defendant Bush and Defendant Investigator Farlow found McKenzie at a friend's house and asked about Iris's location.  (Id. ¶ 76, 80.) She responded "My mom doesn't want anybody to know."  (Id. ¶ 80.)  She also said that William had spoken to Plaintiff despite Plaintiff's assurances that he could not be reached.  (Id. ¶ 89-91.)  Investigator Farlow concluded that Plaintiff misled the police as to the location of Iris, knew where she actually was, and told McKenzie to lie to the police as well. (Id. ¶ 93.)  Believing that Plaintiff had interfered with their investigation and attempt to locate William and Iris, Defendants arrested Plaintiff for obstruction.  (Id. ¶ 104-08.)

_____

[2] Plaintiff and Chrisalena now dispute whether Chrisalena told Defendant Bush that William used illegal drugs and was involved in a satanic cult. (Pl.'s BSAJ, Dkt. [138-1]); (Fryer's Statement Under Penalty of Perjury, Dkt. [138-4].)

3

Plaintiff brought an action pursuant to 42 U.S.C. § 1983 for false arrest, conspiracy, unconstitutional detention and confinement, and supervisory liability against Defendants Sheriff Joel Robinson, Deputy Andra Bush, Deputy Ian Geiman, Investigator Faye Spaulding, and Investigator Lisa Farlow. (Pl.'s Am. Compl., Dkt. [22].)  The Court dismissed the supervisory liability claim against Robinson and Plaintiff voluntarily dismissed her claims against Deputy Geiman.  The Court granted summary judgment in favor of the remaining Defendants on July 18, 2014.  (Order, Dkt. [126].)  The Court concluded that Defendants were entitled to qualified immunity because they were acting in their discretionary authority "pursuant to their official duties to preserve public order, to maintain the peace, and to protect lives, persons, property, health and morals," and because there was probable cause to arrest Plaintiff for obstruction based on "ample uncontradicted evidence that gave Defendants reason to believe Plaintiff knew where William and Iris were, yet lied." (Id. at 19, 23.)

Plaintiff now moves the Court pursuant to Rules 60(b)(2) and 60(b)(3) to set aside its entry of summary judgment, claiming she has newly discovered evidence and that Defendant Bush committed fraud or misrepresented facts.

(Pl.'s BSAJ, Dkt. [138-1].)  The newly discovered evidence that is the basis of Plaintiff's motion is a recantation by Chrisalena of her previous sworn testimony.  (Fryer's Statement Under Penalty of Perjury, Dkt. [138-4].)  The gist of Chrisalena's recantation is that neither she nor her attorney had a copy of the custody order with them when they met with Defendant Bush, (id. ¶¶ 5-8), and that she never told Defendant Bush that William was using illegal drugs or that he "was involved in a sacrifice group that conducted animal sacrifice and valued the sacrifice of a child or a child's virginity." (Id. ¶ 10.)  Again, Plaintiff's motion includes arguments to set aside the Court's judgment pursuant to both Rule 60(b)(2) and Rule 60(b)(3).  Thus, the Court will address each in turn.

## Discussion

## I. Rule 60(b)(2) - New Evidence

### A.  Legal Standard

Rule 60(b)(2) permits the Court to grant a party relief from a final judgment on the grounds of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." FED. R. CIV. P. 60(b)(2).  For the court to grant relief based upon

5

newly discovered evidence under Rule 60(b)(2), a movant must meet a five part

test:

> (1) the evidence must be newly discovered since the trial; (2) due diligence on the part of the movant to discover the new evidence must be shown; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be such that a new trial would probably produce a new result.

Waddell v. Hendry Cty. Sheriff's Office, 329 F.3d 1300, 1309 (11th Cir. 2003).

A motion to set aside judgment pursuant to Rule 60(b)(2) "is an extraordinary

motion and the requirements of the rule must be strictly met" because

"[f]inality is a virtue in the law." Id.

> B. Analysis

Plaintiff contends that Chrisalena's recantation of her previous testimony

undercuts the basis for the Court's ruling.   (Pl.'s BSAJ, Dkt. [138-1] at 3.)

Specifically, Plaintiff urges the Court to set aside its judgment based on

Chrisalena's statement that there was no custody order presented to Defendant

Bush prior to her investigation into the whereabouts of William and Iris and her

statement that she never told Defendant Bush that William used illegal drugs or

that he was involved in a satanic cult.  (Id. at 2-4.)  The Court concludes that

6

Plaintiff failed to meet the requirements of a motion to set aside judgment pursuant to Rule 60(b)(2).

Though the evidence is not merely cumulative or impeaching, it runs afoul of several of the other requirements under Rule 60(b)(2). First, it is unclear whether the evidence was newly discovered since the Court's Order granting summary judgment. Chrisalena's statement is undated. (Fryer's Statement Under Penalty of Perjury, Dkt. [138-4].) Without knowing when the statement was made, it is impossible for the Court to determine whether it was newly discovered after summary judgment. For the same reason, it is also impossible to know whether Plaintiff exercised due diligence in discovering the evidence.

Second, and more importantly, Plaintiff's new evidence fails to satisfy the materiality requirement. And because the evidence is immaterial it would not likely produce a new result at trial. Even if the Court were to accept as true that there was no custody order and that Chrisalena did not tell Defendant Bush that William used illegal drugs and participated in a satanic group, Defendants would still be protected by qualified immunity.

"Qualified immunity offers complete protection for government officials

sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  A defendant asserting the qualified immunity defense must first show that she was engaged in a "discretionary function" when she performed the act at issue.  Holloman v. Harland, 370 F.3d 1252, 1263-64 (11th Cir. 2004).  The burden then shifts to the plaintiff to show that the defendant is unentitled to qualified immunity.  Id. at 1264.

Plaintiff claims that the existence of the custody order "was the basis of this Court's finding."  (Pl.'s BSAJ, Dkt. [138-1] at 3).  But the Court grounded its determination that Defendants acted in their discretionary authority in the fact that they were acting to ensure Iris's safety.  (Order, Dkt. [126] at 19) ("[T]he Court finds that Defendants were exercising their lawful authority pursuant to their official duties to preserve public order, to maintain the peace, and to protect lives, persons, property, health and morals.") (citations and quotations omitted).  Chrisalena had expressed concern that William fled with their child, Plaintiff told Defendants that they were out of state, and park

8

rangers could not find William and Iris in the area that Plaintiff said they could be located.  Based on this information, it would not be unreasonable for an "officer [to have] have believed they had a duty to locate William to ensure Iris's safety."  (Id. at 21.)

The Eleventh Circuit affirmed the Court's finding, adding that "the general act of arresting a suspect is clearly part of Defendant's job-related powers and responsibilities . . . nothing evidences that Defendants carried out Plaintiff's arrest in a way that exceeded the range of their discretion or in an otherwise unauthorized manner."  Valentine v. Robinson, 601 F. App'x 778, 781 (11th Cir. 2015).  Because Defendants were acting in their discretionary authority pursuant to their duty to preserve public order, to maintain the peace, and to protect lives, persons, property, health and morals, the burden shifted to Plaintiff to show that Defendant's violated a federal right that was clearly established at the time of the arrest.  Vinyard, 311 F.3d at 1346.

Plaintiff did not satisfy this burden because, even absent the Texas custody order and the claims of illegal drug use and satanic activities, Defendants acted with probable cause in arresting Plaintiff for obstruction. "An arrest made with probable cause . . . constitutes an absolute bar to a section

1983 action for false arrest." Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996). An officer has probable cause to arrest "if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed or is committing an offense." Id.

Even absent the Texas custody order and the claims of illegal drug use and satanic activities, Defendants had a reasonable belief that Plaintiff was obstructing their investigation and so had probable cause to arrest her. As the Eleventh Circuit said in affirming this Court's Order:

> [a]mple evidence indicated that Plaintiff had been untruthful with Defendants. William and Iris could not be found at the campground where Plaintiff said they were. School attendance records contradicted Plaintiff's contention that William frequently took Iris out of school to go camping. Despite Plaintiff's insistence that she could not reach William, Defendants had reasonably trustworthy information that plaintiff had, in fact, spoken with William at least twice in the past two days. And, based on Defendants' conversation with McKenzie, Defendants had reason to believe that Plaintiff did not want anyone to know about Iris's true location and had instructed McKenzie not to tell.

Valentine, 601 F. App'x at 782. Chrisalena's recantation does not contradict any of this evidence. Thus, the Court's determination that the officers had

10

probable cause in arresting Plaintiff for obstruction and so were entitled to

qualified immunity is not altered by Chrisalena's statement.  Because

Chrisalena's statement would not alter a determination that Defendants were

entitled to qualified immunity, it is not material evidence and, even if taken as

true, would not likely produce a new result at trial.  Thus, there is no new

evidence sufficient to set aside the Court's judgment pursuant to Rule 60(b)(2).

## II.  Rule 60(b)(3) - Fraud or Misrepresentation

### A.  Legal Standard

Rule 60(b)(3) permits the Court to set aside judgment on the grounds of

"fraud[], misrepresentation, or misconduct by an opposing party."  FED. R. CIV.

P. 60(b)(3).  Generally, Rule 60(b)(3) "is aimed at judgments which were

unfairly obtained, not at those which are factually incorrect."  Rozier v. Ford

Motor Co., 573 F.2d 1332, 1339 (5th Cir. 1978).[3]  "Factually incorrect

judgments are the subject of Rule 60(b)(2)."  Id.  To prevail on a 60(b)(3)

motion, "the moving party must prove by clear and convincing evidence that

the adverse party obtained the verdict through fraud, misrepresentations, or

---

[3] Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc). Court adopted as binding precedent all decisions of former Fifth Circuit decided before October 1, 1981.

11

other misconduct." <u>Watson v. Lake Cty.</u>, 492 F. App'x 991, 995 (11th Cir.

2012).  "The moving party must also show that the conduct prevented the

losing party from fully and fairly presenting his case or defense." <u>Frederick v.

Kirby Tankships, Inc.</u>, 205 F.3d 1277, 1287 (11th Cir. 2000).

### B.  Analysis

In her motion, Plaintiff contends that Chrisalena's recantation is

evidence that "Andra Bush committed fraud or misrepresented the facts as set

out in [Chrisalena's] statement."  (Pl.'s BSAJ, Dkt. [138-1] at 6.)  Though

Plaintiff's Brief does not explain how Defendant Bush committed fraud or

misrepresented the facts, the implication is that she did so by lying when she

stated that Ms. Free showed her the custody order.

This argument fails because conclusory assertions of fraud are

insufficient to meet the clear and convincing standard required under Rule

60(b)(3).  <u>See</u> <u>Goode v. Wild Wing Cafe</u>, 588 F. App'x 870, 874 (11th Cir.

2014).  Where the evidence "merely indicates that there are conflicting

accounts," courts are unlikely to find that the high standard of 60(b)(3) is

satisfied.  <u>See</u>, <u>eg.</u>, <u>Kissinger-Campbell v. Randall Harrell, M.D., P.A.</u>, 418 F.

App'x 797, 805 (11th Cir. 2011) (finding that the mere indication of conflicting

accounts on a factual issue did not prove perjury and did not establish clear and convincing evidence of fraud).

The entirety of Plaintiff's argument under Rule 60(b)(3) is that "[p]laintiff also believes that Andra Bush committed fraud or misrepresented the facts as set out in Ms. Fryer's statement and discussed above under 60(b)(2)." (Pl.'s BSAJ, Dkt. [138-1] at 6.)  In other words, Plaintiff offers a conclusory assertion and nothing more.  Even taken as true, Chrisalena's statement indicates only conflicting accounts as to the existence of the custody order.  Therefore, Chrisalena's statement does not satisfy the clear and convincing standard of Rule 60(b)(3).

What is more, Plaintiff makes no attempt to show that the conduct prevented her from fully and fairly presenting her case.  She offers only the bare contention that Defendant Bush committed fraud or misrepresented facts and does not even mention the impact of Defendant's conduct on her ability to present her case.  Thus, Plaintiff has failed to carry her burden under Rule 60(b)3).

## Conclusion

For the foregoing reasons, Plaintiff's Motion to Set Aside Judgment

13

[138] is **DENIED**.

**SO ORDERED**, this 1st day of March, 2016.

_____

**RICHARD W. STORY**
United States District Judge

14